The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below.



**/S/ RUSS KENDIG**

Russ Kendig
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| BRENT A. UNGAR, | ) | CASE NO. 10-60671 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |
| | ) | ADV. NO. 10-6094 |
| _____ | ) | |
| LISA M. BARBACCI, | ) | |
| | ) | JUDGE RUSS KENDIG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRENT A. UNGAR, | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT INTENDED FOR** |
| Defendant. | ) | **PUBLICATION)** |
| | ) | |

Cross-motions for summary judgment are before the court. Plaintiff-trustee ("Trustee") contends that Debtor-defendant ("Debtor") is not entitled to a discharge under 11 U.S.C. § 727(a)(2), (3), (4)(A) and (4)(D). Debtor did not respond to Trustee's motion, but filed a separate motion for summary judgment and argues there is no basis for the denial of discharge. The court now decides both motions.

The court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district on July 16, 1984. Venue in this district and division is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the Court.

## FACTS

Debtor is a self-employed chiropractor. In 2005, he was a party to a divorce. Debtor cites the divorce as the beginning of the financial hardship which ultimately led him to bankruptcy court. By order of the domestic relations court, he is required to pay over $6,000 per month in spousal and child support.[1] Following his divorce, he suffered additional economic stressors which intensified his financial problems. First, the number of patients declined as a result of several factors: the economy resulted in a loss of insurance for some patients as well as declining disposable income to pay deductibles and co-insurance; marketing by competition; and the use of employer-selected clinics for injured employees. Second, in January 2011, the medical doctor he employed in his practice quit. Debtor filed an individual chapter 7 case on February 26, 2010.

Prior to his chapter 7 filing, as part of his chiropractic practice, he was the sole owner of two corporations, Belden Village Pain & Wellness Center ("BV Pain & Wellness") and Advanced Clinical Management ("ACM"). Debtor's interest in these entities was not listed on Schedule B but their existence was disclosed on the Statement of Financial Affairs. Debtor contemporaneously closed both prepetition businesses, filed a personal bankruptcy, and started a new limited liability company. The bankruptcy filing and cessation of the prepetition businesses occurred on February 26, 2010. The prepetition corporations filed chapter 7 petitions on May 5, 2010 ("BV Pain & Wellness") and May 17, 2010 ("ACM"). The cases are jointly administered with Debtor's individual case.

The prepetition entities operated from leased space at 4363 Dressler Road N.W., Canton, Ohio ("Dressler"). To facilitate the closing of the businesses, Debtor vacated the leased premises. Debtor left property at the Dressler location and moved the remaining property. He signed a storage contract with E-Z Locker on February 25, 2010 and hired help and a U-Haul trailer to move items from Dressler on February 26, 2010. The property was moved to three locations: Debtor's new office at 2424 Whipple Avenue, Canton, Ohio ("Whipple"); his residence at 4479 Edwin Drive NW, Canton, Ohio; and to the storage unit. Patient records were moved to the storage locker. Other equipment Debtor intended to use in his self-employment under BVCWC, including a chiropractic table ("Equipment"), was moved to Whipple.

Debtor's new company, Belden Village Chiropractic & Wellness Center ("BVCWC"), was formed around March 3, 2010. Postpetition, Debtor is self-employed as a chiropractor and has an office-sharing agreement with another chiropractor, Dr. Ron Vargo.

---

[1] Debtor sought a reduction and the issue is on appeal in state court.

2

Trustee conducted the initial 341 meeting in Debtor's individual case on April 27, 2010 ("First 341"). The meeting was concluded on June 25, 2010. The first 341 meeting for the corporate cases was held on July 20, 2010 ("Second 341") and continued. Following that meeting, and Trustee's alleged first knowledge of the existence of the Equipment moved to Whipple, Trustee obtained a court order allowing her immediate access to Debtor's home and business to conduct an inventory and appraisal. The continued 341 meeting was held on July 30, 2010 ("Third 341") and concluded on August 19, 2010.

At the time of filing, Debtor was a co-owner of a Nuveen mutual fund investment account. The account is a marital asset although it is unclear when it was funded or who opened the account. The statement is addressed as follows:

Brent A Ungar
and Kelly A Ungar
JT WROS
6611 Glenbrook Ave NW
Massillon OH 44646-9586

As of April 1, 2010, the account had a value of $22,187.77. Debtor did not list the Nuveen account in his schedules. Email communications between Debtor and his ex-wife, dated April 2010, demonstrate Debtor knew of the existence of the Nuveen account as early as April 2010. Trustee did not learn of the account from Debtor, but discovered it when she obtained information from his ex-wife's divorce attorney. It is an asset of the estate. On April 5, 2010, a redemption check was issued to Debtor and Kelly A. Ungar in the amount of $22,166.08. The check was presented to Debtor in May 2010 but it was not endorsed by him. Trustee recovered the funds and retained Debtor's interest.

## LAW

Federal Rule of Bankruptcy Procedure 7056 adopts Federal Rule of Civil Procedure 56 into bankruptcy practice. The rule instructs the court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden on a motion for summary judgment, tasked with the obligation of "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Review of the evidence is taken in the light most favorable to the non-movant, with all reasonable inferences also drawn in favor of the non-movant. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 547, 587 (1986).

Rule 56(c)(1) outlines how to support factual positions:

A party asserting that a fact cannot be or is genuinely

disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Under Rule 56(c)(3), the court is not limited to the materials cited but "may consider other materials in the record." However, this does not mean that a court is required to comb the entire record – the movant must still meet its burden of proof. Poss v. Morris (In re Morris), 260 F.3d 654 (6th Cir. 2001).

Debtor clearly failed in his task of establishing a right to summary judgment. He filed a three page motion for summary judgment supported with various exhibits, including a twenty-three page affidavit. The motion does not make any reference to specific facts in any of these materials, or in the record on the whole, and provides no analysis of the facts as applied to the law. Debtor sought leave to supplement his summary judgment motion, which the court granted. The motion to supplement was more than a mere request to add to the record, it was an attempt to reformulate Debtor's motion for summary judgment. The motion to supplement contains more argument than the motion for summary judgment, citing to facts in the record. As a prime example of the problems with the motion for summary judgment, when the supplement materials were provided, Debtor did not rely on his motion for summary judgment, but relied on the motion to supplement.

The court is not obligated to sift through the record to determine whether a motion on either side should be granted or denied. See Tucker v. Tennessee, 523 F.3d 526, 531 (6th Cir. 2008) (citing Street v. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989)). It is a party's duty to sift the facts and craft an argument. Because Debtor did not meet his burden to establish issues of material fact in his motion for summary judgment, the motion is denied.

In spite of the substandard efforts made by Debtor, the court does still have the ability to use the materials presented in the motion for summary judgment under Rule 56(c)(3). On this basis, the court will consider Trustee's motion for summary judgment.

I.      11 U.S.C. § 727(a)(2)

        A.      Removed Property

4

A court can deny a debtor a discharge under 11 U.S.C. § 727(a) when

> (2)     the debtor, with an intent to hinder, delay or
> defraud a creditor or an officer of the estate
> charged with custody of property under
> this title, has transferred, removed, destroyed,
> mutilated, or concealed, or has permitted to be
> transferred, removed, destroyed, mutilated, or
> concealed--
>
> > (A)     property of the debtor, within one year
> > before the date of the filing of the petition; or
> >
> > (B)     property of the estate, after the date of the
> > filing of the petition.

To succeed in denial of Debtor's discharge for concealment, Trustee must show both the concealment of property of the estate or of the debtor and Debtor's subjective intent to hinder, delay or defraud Trustee through the concealment. *See* Keeney v. Smith (In re Keeney), 227 F.3d 679 (6ᵗʰ Cir. 2000) (citing Hughes v. Lawson (In re Lawson), 122 F.3d 1237 (9ᵗʰ Cir. 1997)). Intent to harm the estate can be inferred from the circumstances. Id. (citing In re Snyder, 152 F.3d 596 (7ᵗʰ Cir. 1998) (other citation omitted)).

Trustee contends she has Debtor pinned to the mat for concealment of property of the estate. Her most strenuous argument centers on the concealment of the Equipment. At first reading, Debtor's testimony at the Third 341 meeting is damning. Trustee views the testimony as an admission of the elements of the section 727(a)(2) claim. The court is not equally convinced.

Trustee's position suffers from a timing problem. In his personal bankruptcy, Debtor listed office equipment with a book value of $42,000, and a fair market value of $1.00, and "FPC equipment" valued at $8,570. No detailed listing of any of this property was included in the schedules. From the beginning, it is not clear who, Debtor or the corporations, owned the property. In a letter dated March 24, 2010, Trustee states "[f]rom a review of the documents provided to me it appears that the equipment listed on Schedule B . . . may in fact be assets of the non-filing corporations." (Debtor's Mot. Summ. J. Ex. D). At the first 341 meeting, the trustee was still trying to determine what equipment was owned by the corporations. (First 341 Tr. 29:4, April 27, 2010). At one point, she directly exclaims: "And I know it's unusual because this is your individual filing, that they may be – some other items might show up in the other filings, is that right?" (First 341 Tr., 38: 12-15, April 27, 2010). The overlap, and potential confusion, of ownership of property was apparent from the start of Debtor's case.

5

Although Trustee repeatedly asserts that the relocated equipment, including the table, is property of Debtor or his estate for her section 727(a)(2) argument, the record does not support her position. Trustee determined that the table was not Debtor's individual property, but that it was property of Advanced Clinical Management, Inc. (Trustee's Ntc. of Prop. Sale of Personal Prop. of the Estate, doc. 69, December 2, 2010). At the time the Equipment was moved to the Whipple address, ACM was not in bankruptcy. Trustee argues that Debtor's removal of the Equipment from the Dressler to Whipple was concealment of that property. She also suggests that her discovery of the property at the Second 341 meeting violated Debtor's duty to disclose and is the foundation for her concealment claim. At the point of removal, the only interest Trustee had in the Equipment was via the valuation of Debtor's interest in ACM. Trustee has not shown that she had a direct interest in the Equipment when it was removed. As property of ACM, the court is not convinced that Debtor's failure to disclose it on his personal bankruptcy evidences an intent to hinder, delay or defraud the trustee or creditors.

Trustee presents no argument or foundation for a claim that Debtor concealed property of the ACM estate. The record shows that, as of the Second 341 meeting (the initial 341 for the corporations), Trustee gained knowledge of the existence of the Equipment. From that discovery, the furor ensued.

Additionally, Debtor denies any concealment. In his affidavit, he says he provided Trustee with a list of the removed equipment on or before the first 341 meeting: "[t]he paper records of the Office Equipment . . . were given to the Trustee after she was appointed and before the 341 Meeting in my personal bankruptcy case on April 27, 2010." (Debtor's Aff. ¶ 17). He states that in a walk-through of the Dressler premises with Trustee before the First 341 meeting, he informed Trustee of the location of the Equipment. (Id. at ¶ 18(a)). If true, there was no concealment. Clearly, the record, and Trustee's actions, suggest Trustee did not obtain the information until much later, in late July. But, viewing the facts in the light most favorable to Debtor, the non-movant, there are enough questions to create a genuine issue of material fact. Trustee presented her case for her section 727(a)(2) claim, but Debtor's affidavit creates a genuine issue of fact.

For the two reasons outlined above, Trustee's motion on the section 727(a)(2) claim is denied.

## B.     Failure to cooperate with Trustee

Trustee crafted a section 727(a)(2) argument that goes as follows: I found out there was undisclosed property and requested immediate access to it to conduct an inventory. Debtor refused my request. This failure to cooperate with me, combined with the incomplete schedules and disclosure of all assets, is indicative of Debtor's intent to conceal assets.

There's no doubt that the bankruptcy petition was poorly prepared. However, the

6

court is drawn back to the same statement from Debtor that was cited above: he claims he provided a list of the assets to Trustee before the 341 meeting in his individual case and therefore denies any concealment. He also avers, in his affidavit, that he informed Trustee of the location of the Equipment during a walk-through. Trustee's actions clearly speak to the contrary. On the present motion for summary judgment, the court cannot decide between the two conflicting positions. Consequently, the court will not grant Trustee's request for summary judgment on this ground.

## II.     11 U.S.C. § 727(a)(4)(A)

### A.     Failure to disclose Debtor's interest in the prepetition corporations

Section 727(a)(4)(A) reads:

> The court shall grant the debtor a discharge, unless--
>
> > (4)     the debtor knowingly and fraudulently, in or in connection with the case--
>
> > (A) made a false oath or account.

The Sixth Circuit Court of Appeals set forth five elements of a false oath count: "1) the debtor made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the debtor made the statement with fraudulent intent; and 5) the statement related materially to the bankruptcy case. Keeney at 685 (referencing Beaubouef v. Beaubouef (In re Beaubouef), 966 F.2d 174, 178 (5th Cir. 1992)). The determination of the existence of a false oath by a debtor is a question of fact. Id.

Trustee claims Debtor's failure to disclose his interest in the prepetition entities on Schedule B is the grounds for denying his discharge under this provision. The court does not find the failure to disclose actionable because there was no concealment. The entities were listed on the Statement of Financial Affairs and Trustee was never in the dark about the existence of the corporations. Prior to the initial 341 meeting, she sent a letter to Debtor's counsel which demonstrates her knowledge of their existence. (Debtor's Mot. Summ. J. Ex. D). She questioned Debtor about them at the 341 meeting held on April 27, 2010 (First 341 Tr., 25:15 et seq.). The court cannot conclude that failing to disclose the corporations on Schedule B, while listing their existence on the Statement of Financial Affairs, is a false statement made with a fraudulent intent. This argument fails.

### B.     The Nuveen account

Trustee's second section 727(a)(4)(A) argument is premised on Debtor's failure to disclose an interest in a Nuveen account valued at more than $22,000. It was not listed in

7

his schedules. Debtor contends he did not know of the existence of the account until June 2010. (Id. at 74:16 et seq.).[2]

Based on what the court can glean from the record, the account was a marital asset which was not divided during the divorce case. This is never explained. In the Spring of 2010, Debtor's ex-wife wanted to split the account. During a May 2010 domestic relations pretrial, Debtor was presented with a check, payable to he and his ex-wife, to endorse. Debtor claims this was his first knowledge of the account and, in his Affidavit, suggests it was opened by his ex-wife, with his money, during the marriage. He points out that the account statement is mailed to a Glenbrook Street address, his former wife's address, and he has never lived there. He refused to endorse the check and referred his ex-wife's counsel to the bankruptcy case. An affidavit from counsel representing him in domestic relations court supports his contentions regarding the Nuveen account.

However, Trustee attaches, as exhibit three to her motion for summary judgment, an email from Debtor to his ex-wife dated April 28, 2010, the day after Debtor's first 341 meeting. The first line of the email precisely reads, : "i own that Nuveen money which is all i have left in my pension. You got the rest and have spent most of it!!! 24 years of me killing myself."[3] Based on this email, Trustee posits that Debtor did know about the account prior to the May pretrial in domestic relations court and failed to disclose it. Debtor offers no explanation for the email statement.

By failing to disclose the Nuveen account, Debtor asserted he had no interests of this nature. Trustee demonstrated that his omission was false by finding the account. Debtor does not dispute this, but merely argues he was without knowledge of the existence of the account, so the omission was neither knowing or fraudulent. The existence of a $22,000 account is undoubtedly material to a bankruptcy case. The court must determine whether it believes that Debtor did not know of the existence of account. If he did not have knowledge of its existence, he could not have fraudulently misrepresented its existence as alleged by Trustee. If he did have knowledge of the account, Trustee's has an arguable claim of fraudulent intent.

The determination of fraudulent intent is generally a factual question. Typically, these issues are not appropriate for summary judgment. Here, Trustee has shown all the elements of a false oath under her version of the facts. Once she meets her burden of proof, the burden shifts to Debtor. "The nonmoving party must do more than show that there is some metaphysical doubt as to the material facts. *See* <u>Matsushita</u>, 475 U.S. at 586, 106 S.Ct.

---

[2] John Guia's affidavit suggests that Debtor's reference to June is incorrect and that the actual date was May 2010.

[3] No one challenged the authenticity or admissibility of the email communications between Debtor and his ex-spouse.

8

1348. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See* Anderson, 477 U.S. 249-50, 106 S.Ct. 2505." Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (2002). Debtor met this challenge with the introduction of his affidavit and the affidavit from his divorce attorney.

Viewing the facts in the light most favorable to Debtor, the court finds that the email statement cannot be read in the manner advocated by Trustee. It is clear from the email that Debtor, at a minimum, is confused. He states he owns the Nuveen money when the account was actually a joint account. He also makes reference to it as a pension fund, which it was not. No one disputes that the Nuveen account statements were mailed to his ex-wife at an address where Debtor never resided, supporting Debtor's contention he did not know of the account.

Two weeks after the email, at the domestic relations pretrial, Debtor is presented with a check from his ex-wife's attorney to split the account. Even Debtor's attorney admits surprise. His attorney's affidavit indicates the parties were still trying to determine who owned the account: debtor or debtor's wife or both of them. Mr. Giua states, in paragraph ten, "I expected Pregont to assert a claim to the proceeds of the Nuveen check in the Divorce Case based (sic) the arrearages she claimed, the Catch-All Provision, and her claim that the Nuveen check represented the proceeds of a roll-over retirement account that she owned." In light of the bankruptcy, and questions about the account, Debtor refused to sign the check.

Debtor's position that he did not know of the existence or legal ownership of the account is plausible and counter to Trustee. Consequently, a question of material fact exists and summary judgment is not appropriate.

## C. Undervaluing assets

Trustee claims Debtor's morbid miscalculation of the value of his property amounts to a false oath for which discharge should be denied. Debtor valued his household goods at $2,500. According to Trustee's appraisal, the court finds the total is closer to $10,000.[4] She contends there was a similar undervaluing of business-related property.

Regarding the household goods, the court finds nothing in the record to suggest

---

[4] The appraisal totals $16,335 but includes property used in his business as well as a John Deere Gator owned by another person but stored at Debtor's residence. With the exception of a four piece bedroom suite, valued at $600, no single "item" is valued at more than $525. The appraisal lumps all personal property together and does not distinguish between items which should be listed in response to questions four, five, six, seven and eight on Schedule B. The appraisal indicates that the sum of the household goods is below the amount which Debtor could exempt by Ohio statute.

Debtor knew his valuation was wrong or that he made the valuation with a fraudulent intent. Trustee merely wants to point to the two different valuations and use the disparity as the basis for denying discharge. Trustee has not established the requisite elements that Debtor knew the statement was false and that it was made with fraudulent intent. Trustee did not meet her burden.

At the First 341 meeting, the trustee inquired as to whether any items were worth more than $1,000 individually and Debtor answered in the negative. (April 27, 2011 transcript, 33:6 et seq.). The appraisal supports the accuracy of this answer. Further, Trustee has not persuaded the court that the undervaluation was material to the case. The amounts listed in the appraisal are within the parameters of the Ohio exemptions.[5] While the court does not want to encourage underestimation of values on Schedule B, there's also a point where the wheat and chaff must be separated. Trustee's appraisal accounts for nearly every item owned by Debtor, from a broken air hockey table to a $10 dog box.

Concerning the value of the business equipment, Trustee fails to prove she is entitled to summary judgment. In his individual petition, Debtor listed "Office equipment" and "FPC equipment" on Schedule B. According to schedule B, the office equipment had a book value of $42,000 and a market value of $1.00; the FPC equipment was valued at $8,570. Trustee simply has not presented any argument on the identity or value of the office equipment.

The motion for summary judgment for making a false oath in connection with undervaluing assets is denied.

### D.    The agreement with Dr. Vargo

Trustee asserts that Debtor made a false statement regarding during his testimony at the First 341 meeting when questioned about his new arrangement with Dr. Vargo. When asked about his arrangement, he stated that he currently rents space from Dr. Vargo. (Transcript of April 27, 2010 341 meeting, 14:9). Debtor clarified that he not only rented space, but also rented staff. (Id. at 14:17). When asked "So you kind of walked in and he provided everything?" Debtor responded "Correct." (Id. at 14:18-20). Trustee maintains that Debtor failed to disclose the transfer of Equipment to the new business location and thereby made a false statement worthy of denying Debtor's discharge.

The court will deny the motion for summary judgment on this point. First, Trustee did not lay out a case for all of the elements of the claim and has not met her burden. Second, the questioning focused on space and people, not property. In this context, and viewing it in the light most favorable to Debtor, the court is not convinced Debtor wrongly withheld information. Additionally, as discussed above, the Equipment was not property of

---

[5] The court notes that it appears that Debtor has paid Trustee for the full value of his household goods without any credit for exemptions.

10

Debtor but belonged to ACM. ACM had not filed its case at the time of the First 341 meeting.

## III.     11 U.S.C. § 727(a)(3)

Trustee presents an argument under 11 U.S.C. § 727(a)(3). Discharge can be withheld when:

> (3)     the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

Trustee admits she eventually received the records, but not in a timely manner. Trustee has cited no authority for her proposition that Debtor's delay in furnishing the records can serve as a basis for the denial of discharge. She equivocates the delay to an attempt to conceal in an effort to bring Debtor's actions under the statute. She may be correct but failed to support her position with any legal authority and did not meet her initial burden. The court will not grant the motion without a stronger legal foundation.

## IV.     11 U.S.C. § 727(a)(4)(D)

As her final ground for denying Debtor's discharge, Trustee contends that debtor "knowingly and fraudulently, in or in connection with the case . . . withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). The burden is on Trustee to prove: "1) the debtor withheld documents relating to the debtor's property or financial affairs; 2) in connection with a case; 3) from an officer of the estate entitled to possession; 4) and such withholding was [done] knowingly and fraudulently." Fidelity & Guaranty Life Ins. Co. v. Settembre (In re Settembre), 425 B.R. 423, 433 (Bankr. W.D. Ky. 2010) (citing Olson v. Slocombe (In re Slocombe), 344 529, 534 (Bankr. W.D. Mich. 2006)). Trustee's argument in this section is identical to the argument presented in part III above: Debtor withheld corporate financial information for more than five months.

Trustee does not identify specifically what was withheld. She generically references "written records" and "financial records." No further detail is provided: Trustee does not identify what documents were requested and not provided or when the request was made. The Second 341 meeting was the initial meeting for the corporations. It is unclear what information was provided through the corporate filings or in response to Debtor's individual

11

case.

Looking at the record, there was a question as to whether the corporations would file, or needed to file, for bankruptcy protection. More than once at the First 341, Debtor's counsel references a desire to talk to Trustee about the corporations and Trustee states she also wants to "discuss" it. (First 341 Tr., 25:11-14, April 27, 2010). In response to some of the questions, Debtor's counsel informs Trustee that some of the information will be available "in the next filing." (Id. at 31:17). Trustee was informed that there were collection accounts and that Debtor had an employee that could help with the collections. (Id. at 5:10-12). Reasonably, the trustee sought information on the value of the businesses. Debtor disclosed receivables of $180,000. (Id. at 30:5 - 31:17). He also stated that all patient records were in storage. When Trustee inquired about the corporate records, Debtor acknowledged "We have that. We have all that." (Id. at 55:6-7). Prior to the First 341 meeting, Trustee had spoken with Debtor's accountant. (Id. at 55:18-19). The First 341 meeting was continued for two weeks with the understanding that if the requested documentation was provided, Debtor would not need to attend. There's nothing in the record that indicates that a further 341 in his individual case was held. The 341 meeting in the individual case was concluded in June 2010. Debtor's affidavit avers to multiple meetings with Trustee outside the 341 meetings. Taking the record as a whole, and viewing it in the light most favorable to Debtor, a question of fact exists as to whether Debtor knowingly or fraudulently withheld information.

Trustee's failure to present a foundation for her claim will result in denial of summary judgment.

## CONCLUSION

The problems in this case partially result from two factors: the intertwined nature of Debtor and his two wholly-owned corporations and the poor attention to preparation of the schedules. As a prime example, Debtor's interest in his two corporations was not listed on Schedule B. No attempt to amend the schedules was ever made. Trustee argues that his discharge should be denied for his failure to disclose these interests. The court disagrees. While the assets may not have been properly scheduled, they were not hidden and the record clearly shows Trustee's knowledge of Debtor's interest in the corporations very early in his individual case.

When Debtor filed an individual case more than two months before either of the corporations filed bankruptcy, ownership of property was not clearly delineated. Debtor scheduled property in his personal case which was owned by one of the corporate debtors. Following the later corporate filings, assets were discovered by Trustee. Debtor claims he did provide a list of Equipment to Trustee, but Trustee's position indicates she did not have the list. Debtor fully failed to disclose his interest in a mutual fund account. Trustee has not carried her burden of proof on her action to deny Debtor's discharge related to the Equipment

10-06094-rk    Doc 29    FILED 07/12/11    ENTERED 07/12/11 16:03:31    Page 12 of 13

or the Nuveen investment account.

As for allegations under 11 U.S.C. § 727(a)(3), (a)(4)(A) and (a)(4)(D), Trustee failed to meet her initial burden of demonstrating either an absence of issues of fact or that she is entitled to judgment as a matter of law. The motion for summary judgment is denied on these counts.

An order will be issued contemporaneously.

#        #        #

**Service List:**

John J Rutter
Michael J. Carey
Roetzel & Andress, LPA
222 S. Main Street
Akron, OH 44308

James R Kandel
101 Central Plaza S
Ste 1003
Canton, OH 44702-1433

Wallace W. Walker, Jr.
Wallace W. Walker, Jr., Esq.
7774 Oakhurst Cir
Brecksville, OH 44141

13